USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/20/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, et al.,

Petitioners,

-v-

TRIANGLE ENTERPRISE NYC INC.,

Respondent.

26-cv-8106 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; and The Carpenter Contractor Alliance of Metropolitan New York (collectively, "Petitioners") petition this Court, pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to confirm an arbitral award entered against Respondent Triangle Enterprise NYC Inc. ("Respondent"). *See* Dkt. No. 1 (the "Petition"). The Petition is unopposed. For the following reasons, the Petition is granted and the award is confirmed.

**BACKGROUND**

The following facts are undisputed.

Petitioners Trustees of New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds") are employer and employee trustees of multiemployer labor-

management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 4. Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under Section 501(c)(3) of the Internal Revenue Code. *Id.* ¶ 5. Petitioner Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro" and, with the ERISA Funds and the Charity Fund, the "Benefit Funds") is a New York not-for-profit corporation. *Id.* ¶ 6.

Respondent is a domestic business corporation organized and established under the laws of the State of New York and an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142. *Id.* ¶ 7. Its last known business address is in Staten Island, New York. *Id.* ¶¶ 7, 10.

Respondent is signatory to a series of Affidavits of Project Labor Agreement in connection with its work as subcontractor on public projects for the New York City School Construction Authority (the "SCA") between June 11, 2022 and October 2, 2023 (the "PLA Affidavits"). *Id.* ¶ 11; Dkt. No. 1-1. The PLA Affidavits bind Respondent to the provisions of the SCA Project Labor Agreement Covering Designated Renovation and Rehabilitation Work for Fiscal Years 2021–2025 (the "PLA"). Dkt. No. 1 ¶ 12; Dkt. No. 1-1. Under the PLA, Respondent was required "to pay timely contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in Schedule 'A' (in the appropriate Schedule 'A' amounts) . . . ." Dkt. No. 1 ¶ 13; Dkt. No. 1-2 Art. 11, § 2(A). Additionally, under the PLA, "Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which

payments are to be paid into . . . such Trust Funds . . . with regard to Program Work done under this Agreement and only for those employees to whom this Agreement requires such benefit payments." Dkt. No. 1 ¶ 14; Dkt. No. 1-2 Art. 11, § 2(C). Through Schedule A of the PLA, Respondent became bound to the Independent Building Construction Agreement with the New York City District Council of Carpenters (the "Union"), covering the time period July 1, 2017, through June 30, 2024 (the "CBA"). Dkt. No. 1 ¶ 15. The CBA requires employers who are parties to it to make contributions to the Benefit Funds for each hour worked by an employee covered by the CBA and employed by the employer within the territory of the CBA. *Id.* ¶ 16; Dkt. No. 1-3 Art. XV, § 1. It also requires Respondent to furnish its books and payroll records when requested by the Benefit Funds for the purpose of conducting an audit to ascertain and verify that the proper contributions have been made. Dkt. No. 1 ¶ 17; Dkt. No. 1-3 Art. XV, § 1. The CBA further binds employers to the documents, policies, and regulations adopted by the Trustees of the Benefit Funds. Dkt. No. 1 ¶ 18; Dkt. No. 1-3 Art. XV, § 3.

One of those policies is the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Dkt. No. 1 ¶ 19; Dkt. No. 1-8. Among other things, the Collection Policy states that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all of the employers bound by or signatory to a collective bargaining agreement with the [Union] or any other agreements under which they are obligated to contribute to the Funds." Dkt. No. 1 ¶ 22; Dkt. No. 1-8 § IV(1).

Pursuant to the CBA and Collection Policy, Petitioners conducted an audit of Respondent covering the period December 25, 2023 through December 28, 2025 (the "Audit"). Dkt. No. 1 ¶ 26. The Audit revealed that Respondent failed to remit contributions to the Benefit Funds in the principal amount of $25,702.69. *Id.*; Dkt. No. 1-9. The Audit also reflected interest through

May 26, 2026 of $4,076.19, open DS receipts of $2,726.64, audit cost of $7,211.75, a delinquency assessment of $5,140.54, and monies owed to the promotional fund of $42.32. Dkt. No. 1-9.

When Respondent failed to pay the sum due under the Audit, Petitioners initiated arbitration before J.J. Pierson (the "Arbitrator"), a designated arbitrator under the Collection Policy. Dkt. No. 1 ¶¶ 27–28. On July 13, 2026, the Arbitrator noticed the hearing for August 10, 2026. *Id.* ¶ 28; Dkt. No. 1-10. At the hearing on August 10, 2026, Petitioners appeared but Respondent did not. Dkt. No. 1-11 at 1–2. On August 20, 2026, the Arbitrator rendered an award (the "Award"). Dkt. No. 1 ¶¶ 29–30; Dkt. No. 1-11. The Arbitrator found that Respondent was liable to Petitioners in the following amounts:

| | |
|---|---|
| Principal | $25,702.69 |
| Interest | $4,544.49 |
| Interest on Late Payments | $108.91 |
| Liquidated Damages | $5,199.41 |
| Promotional Funds | $42.32 |
| Audit Costs | $7,211.75 |
| Open DS Receipts | $2,726.64 |
| Attorney's Fees | $1,500.00 |
| Arbitration Fee | $1,000.00 |

Dkt. No. 1 ¶ 30; Dkt. No. 1-11 at 2–3. The Arbitrator also ordered that if Petitioners were required to enforce this Award in court, Respondent would be responsible for all court costs, including the filing fee of $405.00. Dkt. No. 1 ¶ 31; Dkt. No. 1-11 at 3. The Arbitrator further

ordered that interest would accrue on the Award at an annual rate of 9.5% from the date of Award through the date of judgment. *Id.*

On August 25, 2026, Respondent was served via certified and electronic mail with the Award and a demand for payment of the Award. Dkt. No. 1 ¶ 32; Dkt No. 1-12. Respondent has failed to pay any portion of the Award, and the Award has not been vacated, modified, or corrected and no application for such relief is currently pending. Dkt. No. 1 ¶¶ 33–34.

**PROCEDURAL HISTORY**

This Petition was filed on September 17, 2026. Dkt. No. 1. On the same day, Petitioners also filed a memorandum of law in support of the Petition and a Rule 7.1 corporate disclosure statement. Dkt. Nos. 4–5. Petitioners filed an Affidavit of Service on October 6, 2026, reflecting that Respondent was served on that same date, by sending the Petition and Memorandum of Law in Support of the Petition by first class mail and electronic mail to Respondent's principal place of business and last known e-mail address. Dkt. No. 8. Petitioners also filed an Affidavit of Service reflecting that Respondent was served on October 2, 2026 through the New York State Secretary of State. Dkt. No. 7. On October 7, 2026, the Court issued an order directing Respondent to inform the Court by no later than October 14, 2026 whether it intended to oppose the Petition. Dkt. No. 9. The Court's order was served on Respondent by first class mail and electronic mail on October 8, 2026. Dkt. No. 10. Respondent has not responded to the Petition.

**DISCUSSION**

The Second Circuit has held that an uncontested petition to confirm an arbitral award should be treated "as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). The Court must "examin[e] the moving party's submission to determine if it has met its burden of

demonstrating that no material issue of fact remains for trial." *Id*. at 110 (quoting *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary material is presented." *Id*. (emphasis omitted).

The burden on the party who seeks to confirm a labor arbitration award entered pursuant to a collective bargaining agreement is not onerous. The Court's review of "a labor arbitration award is 'narrowly circumscribed and highly deferential.'" *ABM Indus. Grps., LLC v. Int'l Union of Operating Eng'rs, Loc. 30, 30A, 30B, AFL-CIO*, 968 F.3d 158, 161 (2d Cir. 2020) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)); *see Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision pursuant to such a [collective-bargaining] agreement is very limited."). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Garvey*, 532 U.S. at 509 (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). The Court inquires "only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *ABM Indus. Grps.*, 968 F.3d at 161 (quoting *Nat'l Football League*, 820 F.3d at 536); *see Riverbay Corp. v. Serv. Emps. Int'l Union, Loc. 32BJ*, 2023 WL 3738984, at *4 (S.D.N.Y. May 31, 2023).

The Court has examined the Petition and the supporting materials. They satisfy the conditions for confirmation. The Court has subject matter jurisdiction over this action pursuant to Section 301 of the LMRA, 29 U.S.C. § 185. *See Loc. 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) ("Section 301 of the [LMRA]

provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."). Venue is not disputed and appears to be proper pursuant to 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred [and] a substantial part of property that is the subject of the action is situated" in this District. 28 U.S.C. § 1391(b)(2). The Court has personal jurisdiction over Respondent, which is asserted to be organized under the laws of New York State and has its last known place of business in New York. Dkt. No. 1 ¶¶ 7, 10. The Arbitrator had the authority to make the Award under the Collection Policy and the CBA. *Id.* ¶¶ 20–21. In particular, the Collection Policy and the documents and instruments governing the Benefit Funds provide for the resolution of disputes by arbitration. *Id.* ¶ 20; Dkt. No. 1-4 Art. V, § 2 (empowering the Trustees to assess and collect the principal amount of contributions determined to be due along with interest, damages, penalties, and other remedies, including through arbitration); Dkt. No. 1-8 § VI(1) (providing that "legal action to collect delinquencies shall generally be in the form of arbitration"). The Collection Policy further provides that the Trustees "are empowered to designate one or more arbitrators to serve in collection matters" and reflects that Mr. Pierson is among the arbitrators designated by the Trustees. Dkt. No. 1 ¶ 21; Dkt. No. 1-8 § VI(2).

The CBA and Collection Policy also reflect that, should the Benefit Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Benefit Funds shall be entitled to collect the delinquent contributions, interest on the unpaid contributions or liquidated damages, audit costs, and reasonable costs and attorneys' fees incurred by the Benefit Funds for all time spent in collection efforts, the cost of the payroll review and/or audit, late payment interest, and interest on the award until paid. Dkt. No. 1 ¶¶ 23–24; Dkt. No. 1-3 Art. XV, § 6; Dkt. No. 1-8 §§ IV(11), V(1),(4)–(6). The Award is consistent with the CBA and Collection

Policy, and the Arbitrator acted within the scope of his authority. *See* Dkt. No. 1-9 (audit calculations).

Petitioners seek interest from August 20, 2026, the date of the Award, to the date of judgment at the annual rate of 8.75%. Dkt. No. 1-14. Under New York law, parties can set the rate of prejudgment interest by contract. *See KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 138 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) (summary order). The Arbitrator set the rate of prejudgment interest as 9.5% per annum from the date of the Award through the date of judgment. Dkt. No. 1-11.[1]

Petitioners seek $1,234 in attorneys' fees based on 3.7 hours of work and $560 in costs, comprised of $405 in connection with the costs of this matter and $155 in service fees. Dkt. No. 1 ¶¶ 42–44. The CBA and Collection Policy entitle Petitioners to reasonable attorneys' fees and costs. *Id.* ¶¶ 36–37; Dkt. No. 1-3 Art. XV, § 6(a)(4); Dkt. No. 1-8 § IV(11) (employer is responsible for attorneys' fees and costs in determining the amount of the delinquency and in collecting the delinquency), § V(6) ("Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ."). In addition, "[c]ourts 'have routinely awarded attorney's fees in cases where a party merely refuses to abide by an arbitrator's award without

[1] Though the Petition indicates that Petitioners seek prejudgment interest at the annual rate of 9.5%, *see* Dkt. No. 1 at 9, the proposed judgment requests prejudgment interest at an annual rate of 8.75%, *see* Dkt. No. 1-14. "The Court cannot award plaintiff[s] more than [they] sought." *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 2015 WL 5710320, at *8 (S.D.N.Y. Sept. 25, 2015), *report and recommendation adopted*, 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017); *cf. Garcia v. Skyline Grp. Glob. Corp.*, 2026 WL 2199769, at *14 (S.D.N.Y. July 30, 2026) (declining to award prejudgment interest where plaintiff originally requested it in his prayer for relief but did not address interest in his proposed default judgment). The Court accordingly awards prejudgment interest at the rate set forth in Petitioners' proposed judgment, *i.e.*, at an annual rate of 8.75%.

challenging or seeking to vacate it through a motion to the court.'" *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ., and Indus. Fund v. W.W. Timbers, Inc.*, 2020 WL 1922374, at *4 (S.D.N.Y. Apr. 21, 2020) (alteration adopted) (quoting *Abondolo v. H. & M.S. Meat Corp.*, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)) (collecting cases). The fee request is based on 0.3 hours of time for the partner on the matter at a rate of $430 per hour, and 3.4 hours at a rate of $325 for the law clerk on the matter (who is a 2025 graduate of the University of Michigan Law School). Dkt. No. 1 ¶¶ 39–42; Dkt. No. 1-13. Those fees are reasonable. *See Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Adel Fia Contracting Corp.*, 2022 WL 1720459, at *2 (S.D.N.Y. May 27, 2022). The costs are also reasonable.

**CONCLUSION**

The Petition to confirm the Award is granted and the Award is confirmed in all respects. The Clerk of Court shall enter judgment in the form attached to Dkt. No. 1-14 and shall close this matter.

SO ORDERED.

Dated: October 20, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge